**No. 25-1808**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

————————

GREEN & HEALTHY HOMES INITIATIVE*, et al.*,
*Plaintiff-Appellee*,

v.

ENVIRONMENTAL PROTECTION AGENCY, *et al.*,
*Defendant-Appellant,*

————————

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

(The Honorable Adam B. Abelson,
United States District Judge for the District of Maryland)

————————

## OPENING BRIEF OF APPELLANTS

————————

KELLY O. HAYES
United States Attorney

Molissa H. Farber
Assistant United States Attorney
U.S. Attorney's Office, District of Maryland
36 S. Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4862

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES .................................................................................... iii

I.      INTRODUCTORY STATEMENT ............................................................1

II.     STATEMENT OF JURISDICTION ..........................................................1

III.    STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .................2

IV.     STATEMENT OF THE CASE...................................................................3

        A.      Congress gave EPA the discretion to award environmental justice grants and terminate them based on agency priorities. .........................3

        B.      EPA priorities changed when President Trump took office and EPA terminated Grantees' grants. ...............................................................4

        C.      In challenging the grant terminations, Grantees relied on the terms and conditions of their grant awards. ........................................................5

        D.      Despite this Court's stay decision in *Sustainability Institute* and the Supreme Court's decision in *Department of Education v. California*, the district court ordered EPA to reinstate the grants. .........................8

V.      STANDARD OF REVIEW .....................................................................10

VI.     SUMMARY OF ARGUMENT ...............................................................11

VII.    ARGUMENT .........................................................................................12

        A.      Plaintiffs' challenges to their grant terminations and requests for restoration of funding falls under the exclusive jurisdiction of the Court of Federal Claims under the Tucker Act. ............................................12

                1.      The source of Plaintiffs' rights is a contract. ...........................14

                2.      Grantees seek a contractual remedy........................................19

3. Recent case law has made clear that the Tucker Act applies to grant termination claims such as this one. ................................22

B. Nonstatutory review is unavailable. ....................................................24

C. The district court lacked jurisdiction because the challenged actions are committed to agency discretion by law. ..............................................28

VIII. CONCLUSION ................................................................................................30

# TABLE OF AUTHORITIES

**Rules**

Fed. R. App. P. 4 ................................................................................. 2

Fed. R. App. P. 32 ............................................................................... 31

**Statutes and Regulations**

2 C.F.R. § 200.340 ........................................................................... 4, 6

5 U.S.C. § 551 ................................................................................. 1-2

5 U.S.C. § 702 ................................................................................... 12

28 U.S.C. § 1291 ................................................................................. 2

28 U.S.C. § 1331 ................................................................................. 1

28 U.S.C. § 1491 ........................................................................ 2, 13, 14

28 U.S.C. § 2201 ................................................................................. 2

42 U.S.C. § 7438 ...................................................................... 3, 16, 24, 29

**Cases**

*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015) ........................................................................ 26

*Portsmouth Redev. & Hous. Auth. v. Pierce*,
  706 F.2d 471 (4th Cir. 1983) ...................................................... 13-14, 19

*Dalton v. Specter*,
  511 U.S. 462 (1994) ........................................................................ 27

*DCH Reg'l Med. Ctr. v. Azar*,
  925 F.3d 503 (D.C. Cir. 2019) ....................................................... 25, 26

*Department of Educ. v. California*,
  604 U.S. 650 (2025) ....................................................................... 9, 10

*Fed. Aviation Admin. v. Cooper*,
  566 U.S. 284 (2012) ........................................................................ 12

*Ganiszewski v. Austin, No. 23-cv-2195-BAH*,
  2024 WL 4227759 (D. Md. Sept. 17, 2024) .......................................... 19

*Great-West Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002) ................................................................................ 19

*Ingersoll-Rand Co. v. United States*,
780 F.2d 74–77 (D.D.C. 1985) .............................................................. 18

*James v. Caldera*,
159 F.3d 573 (Fed. Cir. 1998) ............................................................... 19

*Lincoln v. Vigil*,
508 U.S. 182 (1993) ................................................................................ 28

*Megapulse, Inc. v. Lewis*,
672 F.2d 959 (D.C. Cir. 1982) ......................................................... 14, 17

*Milk Train, Inc. v. Veneman*,
310 F.3d 747 (D.C. Cir. 2002) ............................................................... 29

*Nat. Inst. of Health v. Am. Pub. Health Assoc.*,
145 S. Ct. 2658 (2025) ................................. 12, 13, 16, 18, 19, 21, 22

*Nuclear Regulatory Comm'n v. Texas*,
605 U.S. 665 (2025) ........................................................... 24, 25, 26

*Puerto Rico v. United States*,
490 F.3d 50 (1st Cir. 2007) ................................................................... 25

*Solutions in Hometown Connections v. Noem*,
__ F.4th __, 2026 WL 179590 (4th Cir. 2026) ............................. 12, 17, 22, 23

*Spectrum Leasing Corp. v. United States*,
764 F.2d 891 (D.C. Cir. 1985) ....................................................... 13, 17

*Strickland v. United States*,
32 F.4th 311 (4th Cir. 2022) .................................................................. 24

*Sustainability Institute v. Trump*,
__ F. 4th __, 2026 WL 157120 (4th Cir. 2026)
................................................. 12, 15, 16, 17, 18, 20, 21, 22, 23, 26, 27, 29, 30

*Sustainability Institute v. Trump*,
784 F. Supp. 3d 861 (D.S.C. 2025) ................................................... 7, 8

*Sustainability Institute v. Trump*,
No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025) ..................... 8, 9

*U.S. Conf. of Catholic Bishops v. U.S. Dept. of State, No. 1:25-cv-00465* (TNM), 2025 WL 763738 (D.D.C. Mar. 11, 2025) .................................... 19, 20

*United States v. M/V Sanctuary,* 540 F.3d 295 (4th Cir. 2008) (legal .................................................................. 10

*Youngstown Sheet & Tube Co. v. Sawyer* 343 U.S. 579 (1952) ................................................................................. 27

## I.    <u>INTRODUCTORY STATEMENT</u>

This is a grant termination case in which Plaintiffs-Appellees (hereafter, "Grantees") challenged the Environmental Protection Agency's (EPA) termination of a swath of grants related to environmental justice.  The district court cast aside *Department of Education v. California* and this Court's stay order in *Sustainability Institute v. Trump* – both of which indicated the court lacked jurisdiction over the case due to the Tucker Act – and instead granted summary judgment to the Grantees, ordering EPA "set aside" the grant terminations by reinstating terminated grants.

This order was erroneous.  Both the Supreme Court and the Fourth Circuit have repeatedly held that when challenges to the termination of government grants are essentially contract disputes, those cases belong in the Court of Federal Claims. And since the district court issued its decision, the case law establishing that this was reversible error has only mounted.  Most recently in January of 2026, this Court issued published opinions in *Sustainability Institute* and *Solutions in Hometown Connections* reaffirming that grant termination cases such as this one belong exclusively in the Court of Federal Claims.

The district court's order must be reversed.

## II.    <u>STATEMENT OF JURISDICTION</u>

Grantees invoked the jurisdiction of the district court under 28 U.S.C. § 1331. JA 14.  They alleged violations of the Administrative Procedure Act (APA), 5 U.S.C.

§ 551 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the First and Fifth Amendments to the United States Constitution.  JA 14, 36–38.  As explained below, the district court lacked jurisdiction over Grantees' claims because the Tucker Act, 28 U.S.C. § 1491, vested exclusive jurisdiction with the Court of Federal Claims.  28 U.S.C. § 1491(a)(1).

The district court entered summary judgment in Grantees' favor and against the EPA on June 17, 2025, ordering that EPA's termination of the grants be "set aside."  JA 1948.  EPA filed a timely notice of appeal on July 11, 2025.  JA 1950. *See also* Fed. R. App. P. 4(a)(1)(B).  This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## III.    STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Where Grantees claimed that the government wrongfully terminated their federal grants, demanding the grants be reinstated and paid according to the terms and conditions of those grants, did Grantees make essentially contract claims subject to the exclusive jurisdiction of the Court of Federal Claims under the Tucker Act?

2.      Where the relevant appropriations statute does not require that any grants be awarded to Grantees, did EPA act contrary to law by terminating those grants, justifying a nonstatutory review claim?

-2-

3.     Where the terms and conditions of Grantees' grants allowed EPA to terminate grants that no longer "effectuated Agency priorities," and where the statute authorizing the grants gave the EPA Administrator discretion to define the communities that would benefit from the grants, was the decision to terminate the grants committed to Agency discretion by law?

## IV.     <u>STATEMENT OF THE CASE</u>

### A.     CONGRESS GAVE EPA THE DISCRETION TO AWARD ENVIRONMENTAL JUSTICE GRANTS AND TERMINATE THEM BASED ON AGENCY PRIORITIES.

This case arises from EPA's decisions to terminate grants.  For Fiscal Year 2022, Congress appropriated a total of three billion dollars to the Administrator of the EPA "to award grants . . . that benefit disadvantaged communities, *as defined by the Administrator*."     42 U.S.C. § 7438(a), (b)(1) (emphasis added).     This Congressional appropriation contains no guarantees of funding to any particular grant recipient.  *Id.*  Nor does it provide specific limits on the Administrator's ability to terminate grants or restrict the Administrator's ability to redefine which communities are considered disadvantaged.  *Id.*  In fact, it explicitly delegates to the Administrator the power to define disadvantaged communities and award grants accordingly.  42 U.S.C. § 7438(b)(1).

In 2023, during the Biden Administration, EPA established the Thriving Communities Grantmaking Program to award the Congressionally-appropriated

funds at issue in this case. *See, e.g.*, JA 71–72. The Grantmaking Program awarded grants to regional "Grantmakers" who in turn awarded subgrants to "community-based environmental protection projects." JA 78. The Grantees are three entities that received Thriving Communities Grantmaking Program grants as Grantmakers. JA 11, 15–16. Grantees were each awarded two separate awards: an initial award and a subsequent award. JA 17–18.

The grants created a relationship between EPA and Grantees governed by "General Terms and Conditions . . . that govern the grants." JA 18–19. The initial awards are governed by the General Terms and Conditions applying to grants awarded October 1, 2023, or later, which allow EPA to unilaterally terminate the award "[i]f the award no longer effectuates the program goals or agency priorities." JA 193–94. An award may no longer effectuate program goals or agency priorities if, based on EPA's determination, "the objectives of the award are no longer consistent with funding priorities for achieving program goals." JA 194.

### B. EPA PRIORITIES CHANGED WHEN PRESIDENT TRUMP TOOK OFFICE AND EPA TERMINATED GRANTEES' GRANTS.

Approximately one month after President Trump took office, EPA terminated Grantees' initial Thriving Communities Grantmaking Programs grants, citing to the terms of "the Cooperative Agreement governing the organization's initial grant" and federal regulations governing grant termination. JA 174, 327, 422 (termination letters, citing 2 C.F.R. § 200.340). The termination letters provided several

paragraphs of explanation identifying EPA's priority "to eliminate discrimination in all programs" and citing to the EPA Administrator's determination that DEI programs, including "'environmental justice' initiatives . . . conflict with the Agency's policy of prioritizing merit, fairness, and excellence." JA 174, 327, 422. The termination letters also cited concerns regarding wasteful spending. JA 174, 327, 422. EPA eventually terminated the subsequent grants as well.

### C. IN CHALLENGING THE GRANT TERMINATIONS, GRANTEES RELIED ON THE TERMS AND CONDITIONS OF THEIR GRANT AWARDS.

Grantees filed a complaint and motion for preliminary injunction challenging the grant terminations. Mot. for Inj., *Green and Healthy Homes v. Env. Prot. Agency*, No. 25:cv-01096-ABA, Doc. 2 (Apr. 2, 2025) [hereafter, *GHHI*]. EPA opposed the motion in part on the grounds of subject matter jurisdiction, arguing that the grant termination claims were essentially contract dispute claims subject to the exclusive jurisdiction of the Court of Federal Claims under the Tucker Act. Resp., *GHHI*, Doc. 22 (D. Md. Apr. 16, 2025).

Although Grantees ostensibly brought their claims under the Administrative Procedure Act and the First and Fifth Amendments, JA 32–41, they based their claims of arbitrary and capricious termination on the agency's failure to terminate grants in accordance with the terms and conditions of those grants. *See, e.g.*, JA 40 ("[T]he applicable General Terms and Conditions require EPA to 'obtain evidence' or make a 'determination' prior to terminating the grants on the basis of 'program

goals' or 'Agency priorities.'); *id.* ("No reader of the General Terms and Conditions would understand that these 'environmental justice' grant awards could be terminated because of the Agency's adoption of a sweeping new 'priority' . . . .").

Moreover, Grantees conceded that each of their grants was governed by "General Terms and Conditions" which provided for unilateral termination in certain circumstances. JA 18–19. They further alleged that "the General Terms and Conditions nowhere permit EPA simply to declare its adoption of" different priorities "and then unilaterally terminate a grant on that basis." JA 19. They also alleged that, where EPA cited to "program goals or agency priorities" in terminating a grant, the terms and conditions of their grants required EPA to either gather new evidence or make some other determination to justify the termination. *Id.*

The district court held a hearing on the motion for a preliminary injunction, which further underscored both Grantees' reliance on the grant terms and conditions and the need for restoration of funding as an indispensable remedy. *See generally* JA 449–563. Grantees conceded that their claims "are incorporated in or appear in the general [terms and] conditions" of the grant. JA 459. Regarding the appropriate remedy, Grantees repeatedly advocated for restoration of their grants and resuming the flow of grant funds. *See, e.g.*, JA 482 ("It's important that grant access be restored. That is essential to avoid the irreparable harm that we're seeking . . . .");

-6-

JA 495 (noting Grantee GHHI would need to fire employees "if grant funds are not restored").

Without ruling on the motion, the court ordered EPA to produce an administrative record. JA 584. Once the administrative record was produced, the Court ordered the parties to file cross motions for summary judgment. JA 603. Grantees' motion repeatedly referenced the district court's decision in *Sustainability Institute v. Trump*, which pertained to a challenge "under the same Environmental and Climate Justice Block Grants program that provided the Grantees' grants in the present case." Pl. Motion, *GHHI*, Doc. 41-1 at n.5 (D. Md. May 20, 2025) (attaching the district court's *Sustainability Institute* opinion as an exhibit).

The Court then held a second hearing on the motions for summary judgment on May 30, 2025. *See* JA 1809–1885.[1] At this hearing, Grantees argued that their claim was on all fours with *Sustainability Institute v. Trump*, which at that time had been decided in Grantees' favor by the United States District Court for the District of South Carolina. 784 F. Supp. 3d 861 (D.S.C. 2025), *rev'd*, *Sustainability Institute v. Trump*, __ F.4th. __, 2026 WL 157120 (4th Cir. Jan. 21, 2026). *See* JA 1814, 1833 ("There is a lot of overlap between that case and this case."); JA 1834 ("[I]t's clear that our grants were terminated as part of the same conveyer-belt process that

---

[1]    The transcript of proceedings from the May 30, 2025 hearing erroneously included the same cover sheet as the April 29, 2025 hearing.

resulted in the termination of the grants at issue in the [*Sustainability Institute*]

case."); *id.* (noting Grantees were seeking much of the same relief as in

*Sustainability Institute*).[2]

> **D. DESPITE THIS COURT'S STAY DECISION IN *SUSTAINABILITY INSTITUTE* AND THE SUPREME COURT'S DECISION IN *DEPARTMENT OF EDUCATION V. CALIFORNIA*, THE DISTRICT COURT ORDERED EPA TO REINSTATE THE GRANTS.**

While the district court deliberated, this Court issued an order granting the

government's emergency motion to stay the preliminary and permanent injunctions

issued in *Sustainability Institute*. No. 25-1575, 2025 WL 1587100 (4th Cir. June 5,

2025). In so doing, this Court held "the Government is likely to succeed in showing

that the district court lacked subject matter jurisdiction over Plaintiffs' claims"

because it involved "the cancellation of grants that were funded generally by an

authorizing statute but awarded specifically to each grantee by an operative grant

agreement." *Id.* at *1. The order noted that the district court erroneously relied on

*Bowen v. California* in exercising jurisdiction, noting that restoration of grants was

more akin to "an order to enforce a contractual obligation to pay money." *Id.* at *2

(internal quotations omitted) (citing *Bowen v. Massachusetts*, 487 U.S. 879 (1988)).

---

[2]    At oral argument, EPA made one factual distinction between *Sustainability Institute* and the instant case to explain why a factual concession EPA made in that case did not bind EPA in the instant case. JA 1839–41 (noting that *Sustainability Institute* grants were "not discretionary like here" but were "formula grants").

This Court's stay order in *Sustainability Institute* was consistent with, and cited to, the Supreme Court's decision in *Department of Education v. California*. 604 U.S. 650 (2025). As in *Sustainability Institute*, the *California* plaintiffs "challenged, under the APA, the cancellation of grants that were funded generally by an authorizing statute but awarded specifically to each grantee by an operative grant agreement." *Sustainability Institute v. Trump*, 2025 WL 1587100, at *1. The Supreme Court held that, despite *Bowen*, ordering restoration of grants and paying past-due grant obligations was an order "to enforce a contractual obligation to pay money" subject to the exclusive jurisdiction of the Court of Federal Claims. 604 U.S. at 651.

Despite having the benefit of these opinions, the district court relied on *Bowen v. California* in exercising jurisdiction over the grant termination claims and granting Grantees' motion for summary judgment. JA 1929. The district court acknowledged this Court's stay order in *Sustainability Institute* and the Supreme Court's emergency stay order in *California*, but provided no reasoning for departing from those opinions other than that *Bowen* provided jurisdiction and that the restoration of the grants was not "enforc[ing] a contractual obligation to pay money." JA 1930–31. The Court ordered that the Agency's grant terminations be vacated, which "has the effect of prohibiting the EPA from terminating Plaintiffs' grants on the grounds at issue in this case." JA 1947. The Court denied as moot Grantees' claims under the First and

-9-

Fifth Amendments.  JA 1948.  The Court ordered the "terminations of the initial and subsequent grants awarded to the three Plaintiffs" be "set aside."  *Id.*

Several weeks after the Court's order, Grantees filed a motion to compel "Defendants' full compliance with the Order, including unconditional reinstatement of the grants at issue and restoration of access to grant funding."  Mot. to Compel, *GHHI*, No. 25-cv-01096-ABA, Doc. 58 (D. Md. June 17, 2025).  Grantees withdrew their motion to compel approximately a week and a half later, after "each of the Plaintiff Organizations initiated a pay request for payment under each of their respective grants" and "EPA paid the Plaintiff Organizations pursuant to those requests."  Mot. to Withdraw, *GHHI*, No. 25-cv-01096-ABA, Doc. 61 (D. Md. July 8, 2025).

The government timely filed this appeal.  JA 1950.

## V.   <u>STANDARD OF REVIEW</u>

The question of whether the district court properly exercised jurisdiction over Grantees' claims is a legal question that this Court reviews *de novo*. *See United States v. M/V Sanctuary*, 540 F.3d 295, 299 (4th Cir. 2008) (legal questions are reviewed *de novo*).

-10-

## VI.    SUMMARY OF ARGUMENT

The district court inexcusably compounded error upon error in entering summary judgment in Grantees' favor, despite Supreme Court and Fourth Circuit case law compelling a dismissal for lack of subject matter jurisdiction.

Grantees' challenge to EPA's grant terminations is at essence a contract dispute, subject to the exclusive jurisdiction of the Court of Federal Claims pursuant to the Tucker Act.  The two-prong *Megapulse* analysis shows the contractual nature of Grantees' claims.  First, Grantees' source of right to grant funding is contractual, stemming from the terms and conditions of their grant awards.  Second, the remedy Grantees seek – restoration of grant funding – is quintessentially contractual and monetary in nature.  As a result, the district court lacked subject matter jurisdiction and should have dismissed the case.

The district court further erred in finding agency action in excess of statutory authority.  There is no statutory authority requiring EPA to award grant funds to these specific Grantees.  The district court's conclusion that EPA's grant terminations were effective at dismantling  an entire grant program and violation of an appropriations statute, was both outside the court's scope of review and not supported by the record.

Finally, the challenged agency actions were committed to agency discretion by law, further foreclosing judicial review.  Discretionary agency actions such as the

-11-

appropriation of lump sum funds is not subject to an APA challenge, because such decisions require complex weighing of factors best left to experts at each agency.

Because the district court committed numerous egregious errors in legal reasoning, its order should be reversed.

## VII.  ARGUMENT

### A.  PLAINTIFFS' CHALLENGES TO THEIR GRANT TERMINATIONS AND REQUESTS FOR RESTORATION OF FUNDING FALLS UNDER THE EXCLUSIVE JURISDICTION OF THE COURT OF FEDERAL CLAIMS UNDER THE TUCKER ACT.[3]

To sue a federal agency, a plaintiff must identify an express waiver of sovereign immunity in the text of a federal law and show that its claim falls within the waiver's scope. *See Fed. Aviation Admin. v. Cooper*, 566 U.S. 284, 290 (2012) ("a waiver of sovereign immunity must be 'unequivocally expressed' in statutory text"). Here, Grantees relied on the APA, which includes a limited waiver of sovereign immunity for claims "seeking relief other than money damages." 5 U.S.C. § 702. The district court erred when it extended the APA's limited waiver to this action because Grantees sought to restore funding pursuant to the terms and

---

[3]  Recent Supreme Court and Fourth Circuit case law is dispositive of the issues in dispute in this case. *See* Section VII.A.3 (discussing *Sustainability Institute*, __ F. 4th __, 2026 WL 157120, at *6 (4th Cir. 2026); *Solutions in Hometown Connections v. Noem*, __ F.4th __, 2026 WL 179590, at *6–7 (4th Cir. 2026); *Nat. Inst. of Health v. Am. Pub. Health Assoc.*, 145 S. Ct. 2658, 2659 (2025)). However, for logical clarity, these dispositive cases are discussed at the end of this section, after analysis and application of the *Megapulse* framework.

conditions of a grant agreement. Under these circumstances, relief under the APA was unavailable and Grantees' claim instead must have been brought under the Tucker Act. 28 U.S.C. § 1491. Because the Court of Federal Claims has exclusive jurisdiction over claims brought under the Tucker Act, the district court did not have subject matter jurisdiction to issue a preliminary injunction or grant the Grantees' request for summary judgment. 28 U.S.C. § 1491(a)(1).

Where a party asks the Court to restore millions of dollars in terminated grant funding, the Court of Federal Claims has exclusive jurisdiction. *Nat. Inst. of Health v. Am. Pub. Health Assoc.*, 145 S. Ct. 2658, 2659 (2025) [hereafter, *NIH*] ("The Administrative Procedure Act's 'limited waiver of [sovereign] immunity' does not provide the district court with jurisdiction to adjudicate claims 'based on' the research-related grants or to order relief designed to enforce any 'obligation to pay money' pursuant to those grants."); *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 895 (D.C. Cir. 1985) ("Congress intended the jurisdiction and remedies of the Tucker Act to be exclusive in cases based on government contracts.").

The Tucker Act provides that the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded" on "any express or implied contract with the United States." 28 U.S.C. § 1491(a). Where such a claim "seek[s] monetary relief in excess of $10,000," the Tucker Act "vest[s] subject matter jurisdiction exclusively in the Claims Court."

-13-

*Portsmouth Redev. & Hous. Auth. v. Pierce*, 706 F.2d 471, 473 (4th Cir. 1983). *See also* 28 U.S.C. § 1491(a)(1).

Courts apply a two-part test to determine whether the Tucker Act applies to Grantees' claims, considering "the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). Where the source of rights is a contract and the type of relief is monetary, a claim falls under the Tucker Act. *Id.* Here, both prongs of the *Megapulse* analysis indicate that the Tucker Act applies. Moreover, recent case law in both the Fourth Circuit and the Supreme Court has left little doubt that the Tucker Act deprives the district court over jurisdiction to order restoration of grant funding. Plaintiff's attempt to circumvent the Tucker Act by labeling some claims as constitutional does not change the result.

### 1.     The source of Plaintiffs' rights is a contract.

Without the terms and conditions of Grantees' grant agreements, they would have no right to relief. As a result, the source of their rights is a contract with the EPA. Courts "apply the traditional four-part test for the existence of a government contract:  (1) mutuality of intent to contract; (2) offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States." *Id.* at 1339.

-14-

Where a party bases its right to relief on the government's violation of the terms of grant awards, the source of rights is the grant agreements. *Sustainability Institute*, __ F. 4th __, 2026 WL 157120, at *6 (4th Cir. 2026) ("Plaintiffs identify no source of law, besides their grant agreements guaranteeing them the relief they seek: continued payments on those grants."). The source of rights is contractual if "Plaintiffs' 'injury and alleged right to payment stem from the government's refusal to pay promised grants according to the terms and conditions that accompany them.'" *Id.* (quoting *NIH*, 145 S. Ct. at 2664 (Gorsuch, J., concurring in part and dissenting in part)). This is true even if a party seeks "forward-looking injunctive and declaratory relief," because "reinstatement of grants" is "sufficiently contractual to trigger the Tucker Act." *Id.* (internal quotations omitted).

The same applies here. Grantees repeatedly based their claims on violations of the terms and conditions of their grant awards. *See, e.g.*, JA 18 ("Each of the Thriving Communities grants awarded to the three Plaintiff organizations is governed by a Cooperative Agreement, and each Cooperative Agreement references General Terms and Conditions and specific regulatory requirements that govern the grants."); *id.* (identifying, based on grant Terms and Conditions, the circumstances in which EPA "may terminate an award"); JA 40–41 (alleging that the grant terminations violated the terms and conditions of the grants); *id.* at 41 (alleging "no reader of the General Terms and Conditions would understand that these . . . grant

-15-

awards could be terminated" as they were).  Moreover, as in *Sustainability Institute*, no statute specifically awards these Grantees congressionally-appropriated money; only the Terms and Conditions of their grants entitle them to any funds.  42 U.S.C. § 7438(b)(1) (establishing the award of grants for eligible activities without identifying particular grant recipients); JA 479 (conceding statute does not require EPA to select Grantees as grant recipients).  Considering the same grant-authorizing statute as is applicable here, this Court specifically held in *Sustainability Institute* that Section 7438(b)(1) "appropriate[s] funds for particular programs and goals . . . . [b]ut [does not] purport to tell the Government that it must contract specifically with Plaintiffs."  2026 WL 157120, at *11.

Although Grantees dispute that their grants are contracts, there can be no genuine dispute that the grants at issue here satisfy the elements to be considered a contract.  *See, e.g.*, JA 458–59 (arguing that grants are not contracts); 546 (same).  EPA selected Grantees to be regional Grantmakers, Grantees accepted, EPA and Grantees mutually agreed into binding grant terms and conditions, and EPA awarded money in exchange for performance of the grant program from Grantees.  JA 17–23.  Subsequent case law has also made clear that grant agreements are contracts in this context.  *See NIH*, 145 S. Ct. at 2659 (finding dispute regarding terminated grants fell under the Tucker Act); *id.* at 2663–64 (Gorsuch, J., concurring in part and dissenting in part) (explaining that restoration of grants is an "order[] to enforce a

-16-

contractual obligation to pay money" subject to the exclusive jurisdiction of the Tucker Act); *Sustainability Institute*, 2026 WL 157120, at *6 (holding terminated grants are contracts for purposes of Tucker Act analysis); *Solutions in Hometown Connections v. Noem*, __ F.4th __, 2026 WL 179590, at *6–7 (4th Cir. 2026) (same); *id.* at *6 ("[T]hese claims for relief are grounded only on alleged contractual obligations to fund their grants and therefore are committed to the Court of Federal Claims to resolve. Without that contractual basis, the Grantees could claim no relief.").

Even alleging Constitutional violations or abuse of the law does not bring a claim out of the Tucker Act's purview where the alleged statutory violations do not provide a "substantive right to the remedy" a plaintiff seeks. *Spectrum*, 764 F.2d at 894. Instead, where the Government violates a statute but "[t]he right to payments is created in the first instance by the contract," the claim is based in contract and falls within the Tucker Act. *Compare id.* (holding government's violation of the Debt Collection Act did not entitle plaintiff to its requested payments or money owed, but only the contract between plaintiff and the government provided that entitlement) *with Megapulse*, 672 F.2d at 969 (holding that plaintiff's claim that government acted beyond the scope of its statutory authority did not fall under Tucker Act purview because the plaintiff "has gone to great lengths to demonstrate that it is not relying on the contract at all" and "does not claim breach of contract").

Similarly, *Ingersoll-Rand* applied the *Megapulse* framework to determine whether an APA claim fell under the Contract Disputes Act where the plaintiff claimed the government's termination of a contract for "convenience" was arbitrary and capricious in violation of the APA. *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 75, 76–77 (D.D.C. 1985). There, the Court held that where "[t]he contract included a termination-for-convenience clause" that the government invoked to terminate the contract, a challenge to the termination was a contractual dispute. *Id.* at *78 ("That the termination also arguably violates certain other regulations does not transform the action into one based solely on those regulations.").

Moreover, any argument that Grantees' claims relied on the Constitution or a statute as the source of right cannot withstand *NIH*, *Sustainability Institute*, and *Solutions*. This trio of cases all made clear that dressing up a contractual claim with Constitutional or *ultra vires* arguments cannot circumvent the Tucker Act. *See, e.g.*, *NIH*, 145 S. Ct. at 2664 (Gorsuch, J., concurring in part and dissenting in part) ("[R]espondents' injury and alleged right to payment stem from the government's refusal to pay promised grants according to the terms and conditions that accompany them."); *Sustainability Institute*, 2026 WL 157120, at *6 ("The upshot is that the alleged statutory and constitutional violations do not alter the essentially contractual nature of Plaintiffs' APA claims before us on appeal.").

-18-

As discussed above, the source of Grantees' right to receive money from EPA is the terms and conditions of their grant award.  As a result, the source of their rights is a contract.

### 2.    Grantees seek a contractual remedy.

The next step in the *Megapulse* analysis is considering the type of remedy Grantees seek.  Where Grantees seek restoration of grant funding, they seek a contractual remedy.

Courts have consistently held that an APA claim that actually seeks monetary relief is in essence a claim for monetary damages exceeding $10,000.  *See, e.g.*, *Great-West Life Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002); *Portsmouth*, 706 F.2d at 474 (4th Cir. 1983) (vacating district court order); *Ganiszewski v. Austin*, No. 23-cv-2195-BAH, 2024 WL 4227759, at *9 (D. Md. Sept. 17, 2024).  To determine whether a claim seeks monetary damages, courts look beyond the label a plaintiff gives to the relief requested.  *James v. Caldera*, 159 F.3d 573, 579 (Fed. Cir. 1998).

Where Grantees seek to "enforce any 'obligation to pay money' pursuant to those [terminated] grants," they seek contractual relief subject to the Tucker Act's exclusive jurisdiction.  *NIH*, 145 S. Ct. at 2659 (quoting *California*, 604 U.S. at 651).  Challenges to termination of grant agreements are monetary where a plaintiff "wants the Government to keep paying up."  *U.S. Conf. of Catholic Bishops v. U.S. Dept. of*

*State*, No. 1:25-cv-00465 (TNM), 2025 WL 763738 (D.D.C. Mar. 11, 2025). Where an action "seeks the classic contractual remedy of specific performance," only the Court of Federal Claims may resolve the dispute. *Id.* (quoting *Spectrum*, 764 F.2d at 894).

The Fourth Circuit has held that even where plaintiffs seek "forward-looking injunctive and declaratory relief," the essence of the relief is still contractual where it halts or reverses the grant termination and restores access to grant funding. *Sustainability Institute*, 2026 WL 157120, at *7 (holding such relief is "sufficiently contractual to trigger the Tucker Act"). Ordering the restoration of a grant is "the classic *contractual* remedy of specific performance." *Id.* (quoting *Spectrum*, 764 F.2d at 894) (emphasis in *Sustainability Institute*).

There is no legitimate dispute that Grantees sought restoration of funding. *See, e.g.*, JA 25 (noting irreparable harm stems from "suspension of access to grant funding"); JA 34 (in Count One, seeking an order "setting aside . . . suspension of the organizations' access to Thriving Communities grant funds"); JA 35 (in Count Two, same); JA 37 (in Count Three, seeking an injunction "to reinstate the grant awards and prohibiting Defendants from terminating or suspending any of the . . . grants or freezing funding under any of the grants"); JA 38 (in Count Four, seeking "an order . . . setting aside EPA's termination of the . . . grants and suspension of [Grantees'] access to . . . grant funds"); JA 41 (in Count Five, seeking "an injunction

-20-

directing EPA and Administrator Zeldin to reinstate the grant awards and prohibiting the Agency from terminating or suspending any of the . . . grants or freezing funding under any of the grants"); JA 456 (arguing at preliminary injunction hearing, "it is essential that access to these funds be restored"); *id.* (arguing access to funds is "the relief that's necessary"); JA 1834 (arguing at summary judgment hearing, "the principal relief that we're requesting is an order setting aside the termination of the grants at issue here" and "that the Court enjoin EPA going forward from terminating these grants"). Indeed, after the district court entered its order Grantees filed a motion to compel EPA to comply with the order, which they only withdrew once they confirmed that each Grantee "initiated a pay request for payment under each of their respective grants . . . . [and] EPA paid the Plaintiff Organizations pursuant to those requests." Notice, *GHHI*, Doc. 61 (D. Md. July 8, 2025).

Grantees' requested relief is indistinguishable from the relief requested in *Sustainability Institute*, which this Court determined was "sufficiently contractual" to be subject to the Tucker Act's exclusive jurisdiction. 2026 WL 157120, at *7. *See also*, *NIH*, 145 S. Ct. at 2664 (Gorsuch, J., concurring in part and dissenting in part) ("An order vacating the government's decision to terminate grants under the APA is in every meaningful sense an order requiring the government to pay those grants."). The same result as in *Sustainability Institute* and *NIH* should follow here – Grantees' remedy is contractual and thus the Tucker Act applies.

**3.      Recent case law has made clear that the Tucker Act applies to grant termination claims such as this one.**

Both the Supreme Court and the Fourth Circuit have recently made clear that grant termination claims requiring the government to reinstate terminated grants are essentially contract claims subject to the Court of Federal Claims' exclusive jurisdiction.

In *National Institutes of Health v. American Public Health Association*, the Supreme Court partially granted a stay application in a case involving "the Government's termination of various research-related grants." 145 S. Ct. at 2659. In doing so, the Court held that district courts lack "jurisdiction to adjudicate claims" stemming from the grants and could not "order relief designed to enforce" paying money according to the terms and conditions of the grants. *Id.* Justice Gorsuch wrote a scathing concurrence in part and dissent in part, scolding district courts for "casting *California* aside" and "defy[ing]" the Supreme Court's jurisprudence. 145 S. Ct. at 2663 (Gorsuch, J., concurring in part) ("Rather than follow that direction [in *California*], the district court in this case permitted a suit involving materially identical grants to proceed to final judgment under the APA.").

The Fourth Circuit recently applied *NIH* to two grant termination challenges in a pair of published decisions with the same result. *See Sustainability Institute*, 2026 WL 157120; *Solutions*, 2026 WL 179590. These decisions confirm in no uncertain terms that district courts lack subject matter jurisdiction over grant

-22-

termination challenges in which a party seeks restoration of grants. *Solutions*, 2026 WL 179590, at \*7 ("The plaintiffs' motion for preliminary injunction sought at its core an order 'to restore' the Grant Program so that the plaintiffs could have 'funding' for their work." (emphasis removed)); *id.* ("These requests are hardly distinct from those made in *California* and *NIH*, on which the Supreme Court concluded that the plaintiffs were unlikely to succeed with respect to jurisdiction.").

Indeed, in *Sustainability Institute*, this Court reversed a district court order that EPA restore grants made and terminated under the same statute at issue here. 2026 WL 157120, at \*1. The *Sustainability Institute* grant recipients alleged, as the instant Grantees do, that grants were "terminated . . . *en masse*, allegedly without individualized analysis." 2026 WL 157120, at \*6. *See also* JA 1943–45 (finding arbitrary and capricious agency action where "EPA has not conducted any individualized analysis for why these grants or grantees conflict with the agency's priorities"). This Court found that those claims for grant restoration bore "no meaningful difference" to *California*. *Id.* And like *California*, the district court "lacked jurisdiction to issue its order" to restore grant funds and continue payments under the grants. *Id.*

For the purposes of a *Megapulse* analysis, there is no meaningful distinction between the instant case and the grant termination claims in *NIH* and *Sustainability Institute*. These cases mandate that the district court's order be reversed.

-23-

**B.      NONSTATUTORY REVIEW IS UNAVAILABLE.**

Grantees also claimed, and the district court agreed, that EPA's termination of its grants "exceeded the authority Congress delegated to it in § 7438 of the Clean Air Act" by terminating grants in a manner that essentially dismantles the grantmaking program. JA 1936. The district court erroneously held that EPA's grant terminations exceeded statutory authority. JA 1937–40.

As the Supreme Court recently explained, because nonstatutory review "could become an easy end-run around the limitations" of "judicial-review statutes," the Court's "cases have strictly limited" that review. *Nuclear Regulatory Comm'n v. Texas*, 605 U.S. 665, 681 (2025). For that reason, a nonstatutory review claim "is essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds." *Id.* (quotation omitted).

As an initial matter, nonstatutory review is not available if plaintiffs have "'a meaningful and adequate opportunity for judicial review,' or if a statutory review scheme forecloses all other forms of judicial review." *Nuclear*, 605 U.S. at 681 (quoting *Bd. of Govs. of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991)). In circumstances where such review is available, it allows a plaintiff to obtain (at most) "equitable relief," *Strickland v. United States*, 32 F.4th 311, 366 (4th Cir. 2022), in cases where an agency has "plainly act[ed] in excess of its delegated powers"—a standard that captures "only extreme agency error, not merely garden-

-24-

variety errors of law or fact," *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 509 (D.C. Cir. 2019) (alterations and quotations omitted).  To meet that demanding test, a plaintiff may not simply "dress up a typical statutory-authority argument as" a nonstatutory review claim; instead, a plaintiff must demonstrate that an agency has acted "contrary to a specific prohibition in a statute."  *Nuclear*, 605 U.S. at 681 (internal quotation omitted).  Here, nonstatutory review claims fail because Grantees have an adequate alternate means of vindicating their rights, because the Tucker Act precludes the claims, and because the claims would fail on their own merits.

First, Grantees have an adequate means of vindicating their asserted right to grant funds, because they may bring contract actions in the Court of Federal Claims. Such actions would allow them to recover as damages any grant funds to which they are lawfully entitled.  And while Grantees may prefer to bring a district-court suit seeking an injunction requiring restoration of their grants rather than a case seeking damages for any lost funds, they have made no showing that the congressionally provided mechanism for review is "somehow constitutionally insufficient and hence [they] must have a nonstatutory cause of action to vindicate" their rights.  *Puerto Rico v. United States*, 490 F.3d 50, 60 (1st Cir. 2007).

Second, and similarly, the Tucker Act implicitly precludes Grantees' nonstatutory review claims, just as Grantees' APA claims.  The Supreme Court has cautioned that "[t]he power of federal courts of equity to enjoin unlawful executive

action is subject to express and implied statutory limitations." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). And "the express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Id.* at 328 (quotation omitted). Such is the case here. Congress has provided that the sole remedy for Grantees' asserted right to funds under their grants is a suit in the Court of Federal Claims under the Tucker Act. Therefore, to avoid allowing nonstatutory review to become "an easy end-run around the limitations of . . . judicial-review statutes," this Court should reject Grantees' attempt to avoid the Tucker Act by advancing nonstatutory review claims. *Nuclear*, 605 U.S. at 681. This Court rejected a similar attempt by the *Sustainability Institute* plaintiffs and it should arrive at the same result in this case. *Sustainability Institute*, 2026 WL 157120, at *8.

Finally, Grantees' nonstatutory review claims would also fail on the merits. Nonstatutory review is available only where an agency has acted without any colorable statutory authority. *See DCH Reg'l*, 925 F.3d at 509. But as this Court held in *Sustainability Institute* when considering the same grant-establishing statute, no statute prohibits the EPA from freezing or terminating Grantees' grants, nor does any statute specifically require awarding grant money to Grantees. 2026 WL 157120, at *11. *See also, id.* at *12 ("At best, the appropriations statutes may require that certain funding be available for obligation. The statutes do not require, however,

-26-

that Plaintiffs themselves receive any funds."). "Absent a statute specifically prohibiting the Government from freezing or terminating Plaintiffs' grants, the district court erred in finding that the Government likely acted *ultra vires* in freezing or terminating those grants." *Id.* (holding restoration of funding was an erroneous remedy).

To the extent Grantees argue that their nonstatutory review claims are actually "constitutional," this approach is as erroneous as it was in *Sustainability Institute*. Grantees advance no genuine constitutional claims. As the Supreme Court explained in *Dalton v. Specter*, 511 U.S. 462 (1994), not "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id.* at 472. *See also*, *Sustainability Institute*, 2026 WL 157120, at *10 (finding plaintiffs advanced no Constitutional claims under *Dalton*). The Constitution is implicated if, for example, executive officers rely on it as an independent source of authority to act, as in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), or if the officers rely on a statute that itself violates the Constitution. *See Dalton*, 511 U.S. at 473 & n.5. But claims alleging simply that an official has "exceeded his statutory authority are not 'constitutional' claims" that can be asserted through a direct cause of action. *Id.* at 473. Here, Grantees' asserted constitutional claims are really "statutory one[s]," *Dalton*, 511 U.S. at 474, as they assert that the agency has exceeded its statutory authority. *See also*,

-27-

*Sustainability Institute*, 2026 WL 157120, at \*10 (applying *Dalton* to reject plaintiffs' so-called Constitutional claims).

Thus, the district court erred when it found the grant terminations exceeded statutory authority.

**C.    THE DISTRICT COURT LACKED JURISDICTION BECAUSE THE CHALLENGED ACTIONS ARE COMMITTED TO AGENCY DISCRETION BY LAW.**

The district court compounded its error by subjecting the agency's decisions regarding whether to enter into, suspend, or terminate grants to review under the APA which was improper, as the agency's determinations in that regard are committed to agency discretion by law.

As the Supreme Court held in *Lincoln v. Vigil*, 508 U.S. 182 (1993), decisions about how to allocate lump sums or otherwise distribute congressionally-allocated funds are not reviewable under the APA.  *See, e.g.*, *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993) (holding "allocation of funds from a lump-sum appropriation is" an "administrative decision traditionally regarded as committed to agency discretion"); *id.* at 193 (explaining allocation of lump sums "requires 'a complicated balancing of a number of factors which are peculiarly within its expertise':  whether its 'resources are best spent' on one program or another; whether it 'is likely to succeed' in fulfilling its statutory mandate; whether a particular program 'best fits the agency's overall policies'. . . ." (quoting *Heckler v. Chaney*, 470 U.S. 821, 831 (1985))).

Courts have made clear that *Lincoln*'s logic extends to funding programs that leave to the agency "the decision about how the moneys" for a particular program "could best be distributed consistent with" the statute. *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 751 (D.C. Cir. 2002).

The statutory provision authorizing the programs at issue here, 42 U.S.C. § 7438(b)(1), confers discretion on the agency regarding how best to distribute funds to various potential grantees. *See* 42 U.S.C. § 7438(b)(1) (noting funds should be made available based on the Administrator's definitions). The discretion includes whether to suspend or terminate the grants. As noted in *Sustainability Institute*, there is no statutory constraint preventing the Agency from suspending or terminating Grantees' specific grants. 2026 WL 157120, at *11. Nothing in § 7438 constrains the Administrator's discretion to determine how best to allocate the funds appropriated among many different potential grant recipients or activities. *Sustainability Institute*, 2026 WL 157120, at *11 & n.11 (holding that 42 U.S.C. § 7438(b)(1) does not "tell the Government that it must contract specifically with Plaintiffs").

The same statute is at issue in both *Sustainability Institute* and this case, and the same result should follow. *See Sustainability Institute*, 2026 WL 157120, at *11 n.11 (analyzing 42 U.S.C. § 7438). The district court erred in finding the grant terminations were ultra vires and compounded its error by ordering the restoration

of the grants. *Id.* See also, JA 1939 (finding action in excess of statutory authority), JA 1948 (ordering restoration of grants).

## VIII. <u>CONCLUSION</u>

For these reasons, EPA respectfully requests that this court reverse the district court's decision granting Plaintiff's motion for summary judgment because the district court lacked jurisdiction to consider the claims. Moreover, the district court erred when it found action in excess of statutory authority because the challenged actions were committed to agency discretion by law.

Respectfully submitted,

KELLY O. HAYES
United States Attorney

s/ Molissa H. Farber
Assistant United States Attorney
U.S. Attorney's Office
36 South Charles Street, Fourth Floor
Baltimore, Maryland 21201
(410) 209-4862

*Counsel for Defendants-Appellants*

-30-

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No.    Caption:    No. 25-1808

**Green and Healthy Homes Initiative,** *et al.***, v. Environmental Protection Agency** *et al.***,**

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

X    this brief contains 6,917 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), *or*

☐    this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

X    this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman, 14 pt., *or*

☐    This brief has been prepared in monospace typeface using _____ with _____.

Dated:  March 24, 2026

/s/  Molissa H. Farber
Molissa H. Farber
Assistant United States Attorney

*Counsel for Defendants-Appellants*

-31-