**No. 25-1808**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

GREEN & HEALTHY HOMES INITIATIVE, *et al.*,
*Plaintiffs-Appellees*,

v.

ENVIRONMENTAL PROTECTION AGENCY, *et al.*,
*Defendants-Appellants,*

_____

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

(The Honorable Adam B. Abelson,
United States District Judge for the District of Maryland)

_____

## REPLY BRIEF OF APPELLANTS

_____

KELLY O. HAYES
United States Attorney

Molissa H. Farber
Assistant United States Attorney
U.S. Attorney's Office, District of Maryland
36 S. Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4862

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ...............................................................................1

TABLE OF AUTHORITIES...........................................................................2

I.      INTRODUCTION.................................................................................5

II.     ARGUMENT .......................................................................................6

    A.      This is a contract dispute that belongs in the Court of Federal Claims. ..............................................................................................7

        1.      Plaintiffs overextend the FGCAA................................................7

        2.      The claims are founded on the cooperative agreements...........14

        3.      Plaintiffs seek a contractual remedy. ........................................18

    B.      Plaintiffs fail to defeat the government's argument that the challenged actions are committed to Agency discretion by law...........................24

III.    CONCLUSION ..................................................................................25

# TABLE OF AUTHORITIES

**CASES**

*112 Genessee St., LLC v. United States*,
   166 F.4th 1017 (Fed. Cir. 2026) ........................................................ 13

*ACT Now & Met. Family Servs. v. U.S. Dept. of Educ.*,
   No. 1:25-CV-15704, 2026 WL 1847100 (N.D. Ill. June 26, 2026) ............. 15, 19

*Am. Council of Learned Soc'ys v. Nat'l Endowment for Humans.*,
   2026 WL 1256545 (S.D.N.Y. May 7, 2026) ............................... 13, 14

*American Public Health Ass'n v. Nat'l Insts. of Health*,
   145 F.4th 39 (1st Cir. 2025) ........................................................ 17, 18

*Bennett v. New Jersey*,
   470 U.S. 632 (1985) ................................................................. 10

*Boaz Hous. Auth. v. United States*,
   994 F.3d 1359 (Fed. Cir. 2021) .................................................. 11

*California v. Dep't of Educ.*,
   604 U.S. 650 (2025) ......................................................... 7, 9, 12, 17

*Climate United Fund v. Citibank, N.A.*,
   154 F.4th 809 (D.C. Cir. 2025) .......................................... 15, 16, 19

*Coggeshall Dev. Corp. v. Diamond*,
   884 F.2d 1 (1st Cir. 1989) ...................................................... 23

*Columbus Reg'l Hosp. v. United States*,
   990 F.3d 1330 (Fed. Cir. 2021) ................................................. 8

*Dep't of the Army v. Blue Fox*,
   Inc., 525 U.S. 255 (1999) ....................................................... 18, 19

*Higbie v. United States*,
   778 F.3d 990 (Fed. Cir. 2015) ................................................. 10

*Holmes v. United States*,
   657 F.3d 1303 (Fed. Cir. 2011) ...................................................... 10, 11

*Hymas v. United States*,
   810 F.3d 1312 (Fed. Cir. 2016) .......................................................... 7

*Ingersoll-Rand Co. v. United States*,
   780 F.2d 74 (D.C. Cir. 1985) ............................................................ 16

*Lummi Tribe of Lummi Rsrv. v. United States*,
   870 F.3d 1313 (Fed. Cir. 2017) ........................................................ 13

*Megapulse Inc. v. Lewis*,
   672 F.2d 959 (D.C. Cir. 1982) ...................................................... 5, 12

*Nat'l Ctr. for Mfg. Scis. v. United States*,
   114 F.3d 196 (Fed. Cir. 1997) .......................................................... 13

*Nat'l Insts. of Health v. Am. Pub. Health Assoc.*,
   145 S. Ct. 2658 (2025) ..................................... 7, 9, 10, 12, 15, 17, 18

*Pacito v. Trump*,
   169 F. 4th 895, 925 (9th Cir. 2026) .......................................... 11, 12

*Rick's Mushroom Service, Inc. v. United States*,
   521 F.3d 1338 (Fed. Cir. 2008) ........................................................ 11

*Robbins v. U.S. Bureau of Land Mgmt.*,
   438 R.3d 1074, 1082 (10th Cir. 2006) ............................................. 23

*San Antonio Hous. Auth. v. United States*,
   143 Fed. Cl. 425 (2019) ..................................................................... 8

*Sea-Land Serv., Inc. v. Brown*,
   600 F.2d 429 (3d Cir. 1979) ............................................................. 23

*Sols. in Hometown Connections v. Noem*,
   165 F.4th 835 (4th Cir. 2026) ................................................ 6, 18, 24

*Spectrum Leasing Corp. v. United States*,
   764 F.2d 891, 894 (D.C. Cir. 1985) ................................................. 24

-3-

*Summit Power Grp., LLC v. United States*,
 139 Fed. Cl. 369, 373 (2018) ........................................................ 13, 14

*Sustainability Inst. v. Trump*,
 165 F.4th 817 (4th Cir. 2026) ................... 5, 6, 10, 15, 16, 17, 18, 19, 22, 24, 25

*Sustainability Inst. v. Trump*,
 No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025) ................................. 15

*Tuscon Airport Auth. v. Gen. Dynamics Corp.*,
 136 F.3d 641 (1998). ................................................................. 23, 24

*U.S. Conf. of Cath. Bishops v. Dep't of State*,
 770 F. Supp. 3d 155 (D.D.C. 2025) ..................................................... 19

*Up State Fed. Credit Union v. Walker*,
 198 F.3d 372 (2d Cir. 1999) ............................................................ 23

*Vera Inst. of Justice v. U.S. Dep't of Justice*,
 805 F. Supp. 3d 12 (D.D.C. 2025) ....................................................... 9

## Statutes

28 U.S.C. § 1491 ......................................................................... 7, 8
31 U.S.C. §§ 6303–6305 ("FGCAA") ................................................... 5, 6, 7, 9, 14

## I.     <u>INTRODUCTION</u>

Plaintiffs' brief spends over twelve thousand words avoiding the reality that can be summarized in fewer than ten: this case is the same as *Sustainability Institute*. It involves grant agreements awarded under exactly the same statute by the same agency, involving similar grants for the same eligible activities, and both plaintiffs made materially the same challenges and requested materially the same relief. Plaintiffs present no compelling reason for the Court to depart from the binding and squarely applicable precedent set by this Court in *Sustainability Institute*, which itself was following a series of binding Supreme Court cases that all mandate reversal.

Plaintiffs' effort to distinguish *Sustainability Institute* focuses on their creative argument that their cooperative agreements are not contracts. This argument is three pronged, and all three prongs are ineffectual. First, Plaintiffs turn to statutory language in the Federal Grant and Cooperative Agreement Act ("FGCAA") to suggest that a "cooperative agreement" cannot be a contract merely because it is different from a "procurement contract," ignoring even their own cited cases that hold the opposite. Second, they undertake the *Megapulse* analysis but ignore binding Fourth Circuit precedent and fail to grapple with their own arguments and relief sought, which establish that their claim is in essence a contract claim. Finally, they rely on the Court of Federal Claims' (COFC) purported inability to afford a

multi-faceted remedy, ignoring the reality that the majority of courts to consider this argument have rejected it, including this Court.

If the Court does decide to abrogate its *Sustainability Institute* decision – and there is no way to affirm the district court's decision without abrogating *Sustainability Institute* – Plaintiffs still fail to defeat EPA's arguments that its actions are committed to agency discretion.

Although EPA does not advance an argument on the merits of the APA claim in this appeal, the Court need not reach the merits because the district court's lack of jurisdiction is unavoidable.

## II.    **ARGUMENT**

Plaintiffs attempt to escape the reversal that *Sustainability Institute* mandates by arguing that their cooperative agreements – that are just like the cooperative agreements at issue in *Sustainability Institute* – are not contracts.  Doc. 39 at 35–45. While it is true the FGCAA articulates the circumstances appropriate for Agencies to use contracts, grants, or cooperative agreements to provide funding to recipients, the distinctions in the FGCAA have no bearing on whether cooperative agreements or grants can be considered contracts for Tucker Act purposes.  They can.  Plaintiffs erroneously conclude that EPA's choice to award cooperative agreements to provide financial assistance is dispositive in this case.  In doing so, they disregard this Court's reasoning in both *Sustainability Institute* and *Solutions in Hometown Connections*,

the Supreme Court's reasoning in *California* and *NIH*, and instead urge this Court to adopt the reasoning of courts in other circuits analyzing different kinds of cooperative agreements in different contexts. This Court should reject that invitation.

**A.     This is a contract dispute that belongs in the Court of Federal Claims.**

**1.     Plaintiffs overextend the FGCAA.**

Plaintiffs primarily rely on a misreading of the FGCAA to support their argument that their cooperative agreements are not contracts. Their argument goes like this: the FGCAA defines "cooperative agreements" separately from "procurement contracts," so a cooperative agreement cannot be any kind of contract. Doc. 39 at 36 (citing 31 U.S.C. §§ 6303–6305). This is fallacious reasoning; Plaintiffs confuse the question whether the cooperative agreements are *procurement* contracts with the question whether they are contracts *at all*. Only the former require a "direct benefit" to the United States. *Hymas v. United States*, 810 F.3d 1312, 1317, 1327–28 (Fed. Cir. 2016) (quotations omitted) (holding that an agreement providing indirect benefits to the government was not a procurement contract and so the Claims Court did not have jurisdiction under 28 U.S.C. § 1491(b)(1), the jurisdictional provision that "speaks '*exclusively*' to 'procurement solicitations and contracts'").

The definition of "procurement contract" is relevant because procurement contracts give rise to different procedures in the Court of Federal Claims and vests

jurisdiction in that court in a broader set of circumstances such as disputes about contract formation. *See* 28 U.S.C. § 1491(b). But Tucker Act jurisdiction for breach-of-contract claims is not limited to disputes over procurement contracts. *Id.* § 1491(a)(1) (providing exclusive jurisdiction in the Court of Federal Claims for claims against the United States based on "any express or implied contract with the United States").

To constitute a non-procurement contract with the United States, an agreement must "contain[] the four required elements of offer, acceptance, consideration, and proper government authority." *San Antonio Hous. Auth. v. United States*, 143 Fed. Cl. 425, 463 (2019). The agreements at issue here provide all four elements, and indeed it appears Plaintiffs dispute only the consideration element. But consideration was given here: in exchange for federal funds, Plaintiffs agreed to perform regional grantmaker functions and comply with numerous requirements set out in the notices of award. That is sufficient. *See Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1340 (Fed. Cir. 2021) (holding that consideration exists where a grant recipient "agreed to comply with an array of requirements attached to the receipt, use, and distribution of the grant money"). Further establishing consideration, Plaintiffs also agreed to collect and maintain data about the work done under the awards, as well as to report any waste, fraud, or abuse. *See, e.g.*, JA 200 (establishing requirement to "monitor[] subrecipient performance . . . and report the

results of the monitoring in performance reports…"); JA 205–207 (establishing reporting requirements); JA 232 (establishing requirement to report waste, fraud, and abuse). This constitutes a "direct benefit" to the government. *Vera Inst. of Justice v. U.S. Dep't of Justice*, 805 F. Supp. 3d 12, 29 (D.D.C. 2025) (appeal pending) (reporting requirements, along with a responsibility "to report any fraud, waste, and abuse," shows "[t]he government also received some direct benefit from the agreements").

If the Court accepts Plaintiffs' argument that cooperative agreements are not contracts because they do not provide a "direct benefit" to the United States, then grants would not be subject to Tucker Act jurisdiction either. *See* 31 U.S.C. § 6304(1) (the "principal purpose" of grant agreements is "to transfer a thing of value to the State or local government or other recipient to carry out a public purpose of support or stimulation authorized by a law of the United States instead of acquiring . . . property or services for the direct benefit or use of the United States Government"). That argument fails on its face because the Supreme Court has twice confirmed that grants are contracts. *California v. Dep't of Educ.*, 604 U.S. 650, 650–51 (2025); *Nat'l Insts. of Health v. Am. Pub. Health Assoc.* (*NIH*), 145 S. Ct. 2658, 2660 (2025).

The Supreme Court in *NIH* rejected Plaintiff's argument that the cooperative agreements are not contracts subject to Tucker Act jurisdiction because they do not

-9-

provide a "direct" benefit to the United States. The funding recipients made this exact argument before the Supreme Court in *NIH*, which the Court necessarily rejected in granting the government's application. *APHA* Respondents' Opposition to Application for Stay at 28-29, *NIH*, 145 S. Ct. 2658 (No. 25A103). The Supreme Court ruled that the research-related grants in that case were indeed subject to the Tucker Act. *NIH*, 145 S. Ct. at 2659. Even more, this is not a new interpretation. *See, e.g.*, *Bennett v. New Jersey*, 470 U.S. 632, 638 (1985) (acknowledging many federal grant programs are contractual in nature). In *Sustainability Institute* this Court adopted the Supreme Court's reasoning in holding that the cooperative agreements at issue were contracts under Supreme Court precedent. *Sustainability Inst. v. Trump*, 165 F.4th 817, 826–28 (4th Cir. 2026).

Plaintiffs also argue that cooperative agreements cannot be contracts because they are not "money-mandating." Doc. 39 at 40–43. Their argument gets matters backwards. A damages remedy is presumptively available for breach-of-contract claims, and this presumption ordinarily satisfies the money-mandating requirement for Tucker Act jurisdiction. *Holmes v. United States*, 657 F.3d 1303, 1314 (Fed. Cir. 2011). But contracting parties may displace that presumption if "the agreement itself provides a [nonmonetary] remedy for breach." *Higbie v. United States*, 778 F.3d 990, 994 (Fed. Cir. 2015). There is no such language in the agreements at play in this case.

The Federal Circuit has identified three "types of contracts [that] are exempt from the presumption that damages are available upon the breach of a contract": (1) "contracts that expressly disavow money damages"; (2) "agreements that are entirely concerned with the conduct of parties in a criminal case and that lack 'an unmistakable promise to subject the United States to monetary liability'"; and (3) "cost-sharing agreements with the government" like the one at issue in *Rick's Mushroom Service, Inc. v. United States*, 521 F.3d 1338 (Fed. Cir. 2008). *Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1365 (Fed. Cir. 2021). The cooperative agreements at issue here do not fall into any of these categories.

In arguing otherwise, Plaintiffs misunderstand and misapply *Pacito* and *Rick's Mushroom*. Doc. 39 at 37–38. *Rick's Mushroom* involved an attempt to obtain damages for "defective specifications" based on a contract in which the government only agreed to share the costs of the project. *Rick's Mushroom*, 521 F.3d at 1343. The Federal Circuit has clarified the substantial limitations of the case's holding, which only stands for the proposition that "the unique cost-share agreement at issue 'd[id] not provide a substantive right to recover money-damages,'" *Holmes,* 657 F.3d at 1315 (alteration in original) (quoting *Rick's Mushroom*, 521 F.3d at 1343). It does not stand for the broad proposition that cooperative agreements, writ large, are not presumed to provide money damages.

-11-

Similarly, although *Pacito* held that a cooperative agreement was not a contract in that specific case, the statute at issue in that case specifically gave the government discretion to "provide . . . services by contract" or by grant. *Pacito v. Trump*, 169 F. 4th 895, 925 (9th Cir. 2026). The court there found it "persuasive but not conclusive" that the government chose to use a cooperative agreement in that statutory context, still applying *Megapulse* to analyze the cooperative agreement at issue. *Id.* at 925, 926 (citing *Megapulse Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982)).

Moreover, *Pacito* distinguished its case from *California* and *NIH* because the *Pacito* plaintiffs did "not seek backpay of funds or a guarantee of continued funding." *Id.* at 929. Contrast this with the instant Plaintiffs, who did seek, and receive, both an injunction barring EPA from terminating their grants. JA 1947 (district court order holding that "vacatur has the effect of prohibiting the EPA from terminating Plaitniffs' grants on the grounds at issue in this case"); *id.* (denying injunction because "Plaintiffs' requested injunction would essentially duplicate this Court's order setting aside the terminations"). The district court also refused to specify in its order that Plaintiffs could not seek backward-looking reimbursement for costs incurred. *Compare* JA 544–45 (government arguing that the district court could either ask Plaintiffs to forgo seeking reimbursement for costs incurred or specifically carve out reimbursement costs in its order) *with* JA 1947–48 (district court order, which did not prohibit Plaintiffs from seeking reimbursement for costs

-12-

already incurred) and JA 62, 243, 354, 456, 1834 (Plaintiffs' accounting of costs incurred, money owed, and need for immediate grant access to resume).

Even more, the "trilogy of cases" Plaintiffs cite to support their argument that they have no Tucker Act remedy because the money they seek does not come from a "money-mandating statute," does not support their case or defeat the Government's argument. *112 Genesee Street* does *not* hold that strings-attached grants are not subject to the Tucker Act. *112 Genessee St., LLC v. United States*, 166 F.4th 1017, 1028 (Fed. Cir. 2026). Similarly, *Lummi* dealt with recapture of grant funds and not allegedly improper grant termination. *Lummi Tribe of Lummi Rsrv. v. United States*, 870 F.3d 1313, 1315, 1317 (Fed. Cir. 2017). Finally, *NCMS* is readily distinguishable because those plaintiffs demanded that the government "be required to expand the existing contractual relationship or to create a new one to cover the remaining appropriated but unobligated funds." *Nat'l Ctr. for Mfg. Scis. v. United States*, 114 F.3d 196, 202 (Fed. Cir. 1997). This is very different from the instant Plaintiffs, who wanted their exact same cooperative agreement reinstated so that they could receive the money due to them under that agreement. JA 42 (asking that the district court "set aside . . . suspension of access to grant funding" and "reinstate Plaintiffs' Thriving Communities initial grant awards").

Plaintiffs' additional cases do no better. For example, *Summit* and *American Council* dealt with plaintiffs who "do not contend that they have a right to actual,

presently due money from the United States." *Summit Power Grp., LLC v. United States*, 139 Fed. Cl. 369, 373 (2018); *Am. Council of Learned Soc'ys v. Nat'l Endowment for Humans.*, 2026 WL 1256545, at *23 (S.D.N.Y. May 7, 2026) (noting plaintiffs' claims "do not arise from any alleged entitlement to payment under the grant agreements"). In contrast, the instant Plaintiffs repeatedly asserted their right to presently due money from the United States. *See, e.g.*, JA 62 (describing categories of costs that require restored grant funding), 243 (noting that plaintiff incurred $300,000 in costs that should be covered under the grant agreement), 354 (noting Plaintiff Philanthropy Northwest "is carrying $220,000 in costs that should be covered by the award through reimbursement from the initial award"), 484 ("It's important that grant access be restored."); 1837 (describing financial impact to organizations and the need for funding).

Thus, the FGCAA does not establish that cooperative agreements are not contracts for purposes of Tucker Act jurisdiction.

### 2.    The claims are founded on the cooperative agreements.

Plaintiffs next attempt to defeat the appeal by arguing that their claims are not "founded upon" the cooperative agreements. Doc. 39 at 45. Plaintiffs' argument that the cooperative agreements are not the source of rights fails given Supreme Court precedent and Plaintiffs own judicial admissions before the district court.

-14-

Plaintiffs first argue that their right to relief stems from the appropriations made in the Clean Air Act, and the APA's restriction on arbitrary and capricious agency action. Doc. 39 at 47–50. If this argument looks familiar, it is because this is materially the same losing argument plaintiffs made in *NIH* and *Sustainability Institute*. *NIH*, 145 S. Ct. at 2660-61 (staying, on Tucker Act grounds, order vacating terminations under APA); *Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100, at *1-2 (4th Cir. June 5, 2025) (same, where plaintiffs brought APA and constitutional claims). This recasting is mere labeling. Plaintiffs' claims mainly turn on whether EPA violated a particular provision of the cooperative agreements with Plaintiffs when it terminated the awards upon concluding that they did not effectuate program goals or agency priorities.

Courts must identify and reject attempts to dress up a contract claim as a regulatory or constitutional one. *Climate United Fund v. Citibank, N.A.*, 154 F.4th 809, 822 (D.C. Cir. 2025) ("The grantees cannot avoid the Tucker Act's jurisdictional channeling by disguising a breach of contract claim as a claim that the government violated the regulations governing grantmaking."). *Accord ACT Now & Met. Family Servs. v. U.S. Dept. of Educ.*, No. 1:25-CV-15704, 2026 WL 1847100, at *9 (N.D. Ill. June 26, 2026) ("But that overlap between contractual and statutory or regulatory requirements governing contracts does not mutate fundamentally contractual claims into regulatory or statutory ones."). In a similar case as the instant

-15-

case, the D.C. Circuit held that the termination of a contract for convenience pursuant to a regulation incorporated into the contract sounded in contract, and the fact that "the termination also arguably violate[d] certain other regulations" and that the plaintiff "allege[d] only a violation of the regulations" did not "change the essential character of the action." *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985). *C.f. Climate United*, 154 F.4th at 821 (claims that the agency violated § 200.340 when it terminated grant agreements "turn[] on the government's rights under the agreements—a question of contract interpretation").

Plaintiffs attempt to distinguish their arguments from those made in *Sustainability Institute* by suggesting that the *Sustainability Institute* plaintiffs did not argue that their rights derived from a statute. Doc. 39 at 48. This argument is a complete misreading of *Sustainability Institute*. In fact, the *Sustainability Institute* plaintiffs argued that their rights derived not from the cooperative agreements but from the text of the Inflation Reduction Act, which established the grant programs. 165 F. 4th at 823. Plaintiffs make the same argument Plaintiffs here. Doc. 39 at 47. Indeed, at the summary judgment stage in this case, Plaintiffs' counsel agreed that the discussion about Tucker Act applicability in the district court's *Sustainability Institute* decision "applies to the termination of those [same] grants." JA 1833. *See also* JA 1834 (Plaintiffs' counsel arguing that their grants were terminated as part of

-16-

the same process as in *Sustainability Institute*).    They seem to disavow those comments now.[1]

*Sustainability Institute* is not distinguishable because plaintiffs there did not make the same argument as the Plaintiffs here.  Rather, it's indistinguishable because the Court rejected the attempt to mislabel a contract claim as a statutory claim, when the only language actually entitling plaintiffs to any funding comes from the contractual language of the cooperative agreement themselves.  *Sustainability Institute*, 165 F. 4th 817, 827 ("[T]he alleged statutory and constitutional violations do not alter the essentially contractual nature of Plaintiffs' APA claims before us on appeal."); *id.* ("The Supreme Court . . . considered and rejected the same argument in *California* and *National Institutes of Health*.").

Indeed, the interpretation Plaintiffs push here is the same interpretation the First Circuit adopted in *NIH* that the Supreme Court soundly rejected.  In *NIH*, the First Circuit attempted to distinguish *California* because the *California* district court "did not award past due sums, but rather provided declaratory relief," and issued relief "under the APA independent of any contractual language."  *American Public*

---

[1]    The distinction the government drew between this case and *Sustainability Institute* was that the grants at issue in the instant case appeared to allow more room for agency discretion than those at issue in *Sustainability Institute*.  JA 1840–41.  To the extent this is a meaningful difference, the purposeful allowance for agency discretion cuts in the government's favor.  *Cf.* Section II.B (renewing argument that termination decisions are committed to agency discretion).

*Health Ass'n v. Nat'l Insts. of Health*, 145 F.4th 39, 50, 52 (1st Cir. 2025) (quotation omitted) (rev'd, *NIH*, 145 S. Ct. at 2658). In issuing a stay, the Supreme Court made clear that the Tucker Act still applied. 145 S. Ct. at 2659. That conclusion demands the same outcome in this case.

Plaintiffs' attempt to recast their contractual claims must fail.

### 3. Plaintiffs seek a contractual remedy.

Finally, Plaintiffs attempt to distinguish their case by arguing that, even though they seek the same remedy of specific performance under the cooperative agreement that the *Sustainability Institute* plaintiffs did, it's not actually specific performance. Their arguments must fail given binding precedent and Plaintiffs' own statements. They sought and received a contractual remedy, which divests the district court of jurisdiction.

This Court has repeatedly held that restoration of grant programs is a contractual remedy, even where that restoration imposes a continuing relationship on the government and the plaintiffs. *See Sustainability Institute*, 165 F. 4th at 826–27 (holding that seeking "restoration of their specific grants under the APA," with no explicit mention of paying money, is a contractual remedy that divests district courts of jurisdiction). *See also Sols. in Hometown Connections v. Noem*, 165 F.4th 835, 843 (4th Cir. 2026) (restoration of grant program is based in contract and is subject to the Tucker Act). *Cf. Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255,

-18-

263 (1999) (holding that where a remedy seeks to "attach money in the hands of the Government," it is "money damages" regardless of whether it is styled as an equitable remedy). This Court squarely stated that there is "no meaningful distinction" between relief that orders paying "past-due grant obligations" and relief that sets aside a grant termination and restores access to funds. *Sustainability Institute*, 165 F. 4th at 828.[2]

Here, Plaintiffs sought the specific performance remedy of reinstatement of the cooperative agreements, and disbursement of money pursuant to those agreements. Plaintiffs confoundingly argue that the district court "did not direct the EPA to perform its obligations," but that's exactly what the order did. The district court's order set aside the termination, reinstating the grants. JA 1948. The

---

[2]    *Accord Climate United Fund v. CitiBank, N.A.*, No. 25-5122, slip. op. at 14 (D.C. Cir. Sept. 2, 2025) (holding that an injunction that barred an agency from terminating grants except where legally permitted sought the contractual remedy of specific performance); *U.S. Conf. of Cath. Bishops v. Dep't of State*, 770 F. Supp. 3d 155, 163 (D.D.C. 2025) (holding that an order requiring "the Government to stop withholding the money due" is an improper order for "the Government to keep paying up"); *ACT NOW*, 2026 WL 1847100, at *10 ("Education cited a contractual term which it believed allowed it to exit the contract before the completion of the contract's term, much in the way a tenant could buy out his lease contract for a predetermined price. Plaintiffs simply disagree that Education had a fair interpretation of the exit clause, and as a remedy seek to undo Education's exit and reinstate Education's contractual obligations. Plaintiffs' request for vacatur is thus "relief designed to enforce" the terms of the contract.").

government suggested that the district court specifically note in its order that plaintiffs must either "forgo . . . reimbursement or specifically carve out that the order is just for prospective relief going forward and not for money already incurred." JA 544–45. The district court did not do that. JA 1948–49.

Even more tellingly, Plaintiffs do not explain or even acknowledge the three affidavits filed with their complaint and preliminary injunction, which spell out the money due to each Plaintiff under the grant agreements:

> 28.     Most imminently, GHHI will be forced to lay off staff as early as this month. GHHI has hired nine full-time employees specifically to work on the Thriving Communities program. GHHI was funding these positions through the $8 million initial grant, and it planned to do so for the three-year duration of the program. GHHI has eight additional employees whose work is funded in part by Thriving Communities grant funding. GHHI will have to lay off at least 10 staff members (given that the grant funded, either fully or partially, 17 employees). GHHI will have to lay off these staff members in the coming weeks if funding is not restored. GHHI has already developed plans to restructure the organization and lay off staff. At present, GHHI is dipping into its reserves to continue paying its employees. This is not a sustainable solution.

at JA 62;

> 21.     The termination of the initial grant and the suspension of access to the subsequent account will cause irreparable harm to the Minneapolis Foundation and its staff. Without reinstatement of the initial grant and access to the $52 million, the Minneapolis Foundation will no longer have funding for the 26 individuals who are employed by the Minneapolis Foundation and its statutory partners in locations across Illinois, Michigan, Minnesota, and Wisconsin to directly administer the Thriving Communities Program. These employees and independent contractors perform a variety of roles supporting the Program, including communications, compliance functions, evaluations, finance and grants administration, information technology, outreach services, program management and oversight, and technical assistance for subrecipients. The Minneapolis Foundation has already advanced approximately $300,000 of its own funds to support staffing while access to the grants has been suspended. After another three weeks of suspension, continuation of the current staffing structure will not be financially viable.

at JA 243;

> 28.     On a weekly basis, Philanthropy Northwest is carrying approximately $21,000 in salary costs to continue to administer the Program and on average $50,000 in non-salary costs for professional fees, travel, and participant support costs. Due to the termination of the "initial grant," as of March 20, 2025, Philanthropy Northwest is carrying $220,000 in costs that should be covered by the award through reimbursement from the initial award. With each passing day and no access to funding, Philanthropy Northwest carries the burden of managing its cash flow and relying on overall enterprise resources, including unrestricted operating reserves to bear these costs. Current projections indicate that termination of the initial grant will lead to Philanthropy Northwest operating at a $500,000 deficit by the end of 2025. Philanthropy Northwest projects we can continue to cover the costs of these salaries from our operating reserve for no more than eight additional weeks as of March 24, 2025. Attachment F.

at JA 354.

They also shirk their own arguments about the need for the district court to issue a remedy that allowed them to withdraw those funds. JA 456 (arguing at preliminary injunction hearing, "it is essential that access to these funds be restored"); *id.* (arguing access to funds is "the relief that's necessary"); JA 1834 (arguing at summary judgment hearing, "the principal relief that we're requesting is an order setting aside the termination of the grants at issue here" and "that the Court enjoin EPA going forward from terminating these grants"). And the Plaintiffs made additional filings after the district court's decision to "compel compliance" with the district court's order, noting that "compliance requires unconditional reinstatement of the pre-existing $8 million and $52 million grants . . . as well as restoration of access to grant funding." Mot. to Compel Compliance, *GHHI*, Doc. 58 (D. Md. June 27, 2025). Plaintiffs withdrew the motion only after they "initiated a pay request for payment under each of their respective grants . . . [and] EPA paid the Plaintiff Organizations pursuant to those requests." Notice, *GHHI*, Doc. 61 (D. Md. July 8, 2025). The facts belie any effort to suggest that Plaintiffs were not seeking contractual or monetary relief.

Plaintiffs make a last-ditch attempt to avoid a straightforward application of *Sustainability Institute*, arguing that because the COFC cannot grant a "complete and adequate remedy," the APA must fill that void. Doc. 39 at 61. In advancing this argument, Plaintiffs ignore the fact that the COFC would be able to make them whole

financially and focus entirely on the facts that there are aspects of their desired relief – continuation of the grants and alteration of agency priorities – that the COFC might not be able to accomplish. The fact that relief before the COFC may be incomplete does nothing to alter the Tucker Act's jurisdictional mandates.

Circuit courts nationwide have rejected Plaintiffs' argument. *Robbins v. U.S. Bureau of Land Mgmt.*, 438 R.3d 1074, 1082 (10th Cir. 2006) ("[T]he APA does not waive sovereign immunity for claims that arise out of a contract and that seek specific performance of the contract as relief.") (citing *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 375 (2d Cir. 1999); *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989); *Sea-Land Serv., Inc. v. Brown*, 600 F.2d 429, 432–33 (3d Cir. 1979). Even the Ninth Circuit considered a lawsuit in which COFC relief would purportedly be incomplete because the plaintiff also sought equitable relief. *Tuscon Airport Auth. v. Gen. Dynamics Corp.* 136 F.3d 641, 645–46 (1998). There, the court analyzed whether an APA suit was contractually barred under the Tucker Act, even if the plaintiff "does not have an 'adequate remedy' in the Court of Federal Claims . . . because that court is not authorized to grant the equitable relief that [plaintiff] seeks." *Id.* at 645. The court held that even if the COFC cannot grant full relief, the APA still bars an action where another statute makes the claim "expressly or impliedly forbid[den]." *Id.* at 646 (quoting 5 U.S.C. § 702). Where the plaintiff sought specific performance of the contract, the claims were "contractually based"

-23-

under *Spectrum Leasing* and the APA could not grant the district court jurisdiction. *Id.* at 647 (citing *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985)). And even more, this Court has held the same when it determined that the Tucker Act deprived districts courts of jurisdiction to hear the similar claims mounted in *Sustainability Institute* and *Solutions in Hometown Connections*.

Thus, despite the fact that Plaintiffs also advance equitable claims, because their claims are essentially a contract action, the Tucker Act divests the district court of jurisdiction and the APA does not restore it.

**B.    Plaintiffs fail to defeat the government's argument that the challenged actions are committed to Agency discretion by law.**

Even if Plaintiffs could establish that the Tucker Act did not preclude district court review, the district court still lacked jurisdiction because the decisions to pause or terminate grants are committed to agency discretion by law. As the opening brief explained, the APA typically does not allow courts to review an agency's decisions regarding how to allocate funds for a grant program absent statutory constraints on discretion. Doc. 33 at 34–36. Here, Plaintiffs concede that EPA has discretion to terminate grants. Doc. 39 at 63. They simply take issue with what they believe to be an insufficient basis for that discretionary decision.

In fact, nothing in the statutory mandates applicable to Plaintiff's grantmaking agreements require EPA to allocate money to Plaintiffs specifically. And the statute

expressly gives the EPA administrator the discretion to award and terminate those grants.  Plaintiffs' reply fails to defeat EPA's opening arguments on this issue.

## III.    CONCLUSION

For the above reasons and those stated in the opening brief, *Sustainability Institute* applies and the district court's decision should be reversed.

Respectfully submitted,

KELLY O. HAYES
United States Attorney

s/ Molissa H. Farber
Assistant United States Attorney
U.S. Attorney's Office
36 South Charles Street, Fourth Floor
Baltimore, Maryland 21201
(410) 209-4862

*Counsel for Defendants-Appellants*

**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

No.    Caption:    No. 25-1808

**Green and Healthy Homes Initiative,** *et al.***, v. Environmental Protection Agency** *et al.***,**

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    X    this brief contains 4742 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), *or*

    ☐    this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    X    this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman, 14 pt., *or*

    ☐    This brief has been prepared in monospace typeface using _____ with _____.

Dated:  _July 24, 2026             /s/  Molissa H. Farber_____
                                      Molissa H. Farber
                                      Assistant United States Attorney

                                      *Counsel for Defendants-Appellants*

-26-